UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN FORDEMWALT, *ex rel.* BASELINE, INC., and individually, | Case No. 1:22-cv-00395-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| HYDROPOINT DATA SYSTEMS, INC., a Delaware corporation; CHRIS SPAIN, an individual; LOU RYAN, JR, an individual; JOHN MORRISSEY, an individual; and TEYMOUR BOUTROS-GHALI, an individual, | |
| Defendants. | |

## INTRODUCTION

Before the Court are: (1) a Motion to Dismiss Direct Claims; (2) a Motion to Appoint a Panel to Conduct an Inquiry of Derivative Claims and to Stay Litigation; and (3) Plaintiff's Motion to Amend the Complaint. *See* Dkt. 5, 24, 27. The Court heard argument on these motions on February 27, 2023. For the reasons explained below, the Court will grant the motion to appoint a litigation panel and stay this action. The Court will also grant the motion to dismiss the direct claims. Plaintiff will be given leave to amend Count 6, but the Court will otherwise deny the pending motion to amend the complaint.

# BACKGROUND[1]

John Fordemwalt is a minority shareholder, the former president, and a founding member of Baseline, Inc. Baseline is an Idaho corporation, which Fordemwalt describes as an industry leader in the sale and development of various irrigation products, such as soil moisture sensors, two-wire protocols and devices, and smart controllers. *Am. Compl.,* Dkt. 18, ¶ 11.

In 2016, roughly 18 years after Baseline was formed, Defendant HydroPoint Data Systems, Inc. purchased a controlling share of the company. HydroPoint is a California corporation and currently owns 78.75 % of Baseline's shares. Fordemwalt remains as a minority shareholder. *Id.* ¶¶ 14-15.

The individual defendants – Chris Spain, Lou Ryan, Jr., John Morrisey, and Teymour Boutros-Ghali – are board members of both HydroPoint and Baseline. As such, they "have the power to control all corporate decisions for Baseline," to the detriment of the minority shareholders. *Id.* ¶ 18.

Since 2016, when HydroPoint acquired its controlling share of Baseline, there have been no independent Baseline board members qualified to vote on transactions between Baseline and HydroPoint. Additionally, Baseline and its board members have failed to: (1) notice and hold annual shareholder meetings; (2)

---

[1] The background facts summarized here are as alleged in the amended complaint.

establish and stagger the terms of the directors; (3) elect directors; (4) keep books and records required by Baseline's bylaws and Idaho statutory law; and (5) provide shareholders with access to corporate books and records. *Id.* ¶ 21.

In addition to failing to follow Baseline's bylaws, the individual defendants have caused Baseline to enter into a "series of conflicted transactions" with HydroPoint. *Id.* Generally, Fordemwalt says Defendant Chris Spain intends to integrate Baseline and HydroPoint to such an extent that the two entities are no longer distinct. *Id.* ¶ 23. More specifically, Fordemwalt points to the following transactions and actions, among others, which he says benefit HydroPoint and damage Baseline's minority shareholders:

- *Management Fees*. "Baseline has been required to pay an intercompany management fee and pay HydroPoint for services it was and is ostensibly receiving from HydroPoint." In May 2022, HydroPoint's board – not Baseline's –increased the management fee from $55,000 per month to $154,000 per month. *Id.* ¶ 26.

- *Diversion of Sales Leads and Opportunities*. Baseline created sales leads and opportunities for products which were subsequently diverted to HydroPoint. The diversion of those sales opportunities were not approved by disinterested, qualified Baseline directors. *Id.* ¶¶ 30-31.

- *Integration of Sales Operations*. The entirety of Baseline's sales opportunities have been integrated into a single system, and Baseline's sales personnel are managed and supervised by HydroPoint sales executive and managers. These structures have the effect of directing sales to HydroPoint and away from Baseline. *Id.* ¶¶ 32-33.

- *Sale of Baseline Products to HydroPoint*. Baseline sells two-wire decoders to HydroPoint at cost or substantial discounts, which HydroPoint then integrates into systems it sells for a significant profit. *Id.*

¶ 34. HydroPoint pays an average of 17% less than other Baseline customers for Baseline products, which costs Baseline hundreds of thousands of dollars in revenue. *Id.* ¶¶ 34-38.

- *Spending on Research & Development; Assertion of Ownership of Baseline Products; Use of Baseline Patents*. HydroPoint has asserted ownership of new products and technology Baseline developed. *Id.* ¶¶ 39-40. HydroPoint has also used a Baseline patent to secure a credit line for itself. *Id.* ¶ 43.

- *Loans.* Baseline has been required to lend millions of dollars to HydroPoint at below-market interests rates without collateral. *Id.* ¶ 48.

- *Control of Assets, Resources, and Money*. HydroPoint has "exercised dominion and control over Baseline assets and resources, including taking control of Baseline money." *Id.* ¶ 51.

Fordemwalt alleges that HydroPoint and the individual defendants took all these actions as part of an effort to "oppress and squeeze out" the minority shareholders. *See id.* ¶¶ 26, 30, 34, 39, 48, 51, 52, 54, 55, 69, 70, 71, 83. He alleges six claims for relief – three derivative claims and three direct claims. Defendants challenge the direct claims – Counts 2, 4, and 6 – in their pending motion.

Count 2 alleges that all defendants breached fiduciary duties to Baseline's minority shareholders. Count 4 alleges that the individual defendants failed to act in good faith and in a manner they reasonably believed to be in the best interest of Baseline, as required by Idaho Code § 30-29-830.[2] Count 6, which names

---

[2] Section 30-29-830(a) sets forth standards of conduct for corporate directors and (Continued)

individual defendants only, alleges that HydroPoint "expended over $180,000 on attorneys to deprive Plaintiff of his right to review books and records of Baseline." *Am. Comp.*, Dkt. 18, ¶ 97.

## THE MOTION TO DISMISS

### A. The Governing Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a

---

officers. It provides, in relevant part: "Each member of the board of directors, when discharging the duties of a director, shall act: (1) In good faith; and (2) In a manner the director reasonably believes to be in the best interests of the corporation."

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.,* 119 F.3d 778, 783, n.1 (9th Cir. 1997).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

## B. Counts 2 and 4 Fail to State Direct Claims Because Fordemwalt Has Failed to Allege a Harm Distinct From that Suffered by All Other Shareholders

Defendants contend that Counts 2 and 4 should be because although they are labeled as "direct" claims, they are textbook derivative claims. In a diversity action, federal courts rely on state law in deciding whether a claim is direct or derivative. *See generally Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987). The Idaho Supreme Court has described a derivative action as follows:

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce *a corporate right or remedy to the corporation* where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action.

*Kugler v. Nelson*, 374 P.3d 571, 576 (Idaho 2016) (citations omitted).

By contrast, a shareholder may bring a direct claim for an injury that directly affects that shareholder "where it appears that injury to the stockholder resulted from violation of some special duty owed to the stockholder by the wrongdoer and *having its origin in circumstances independent of the plaintiff's status as a shareholder*." *Id.* (citation omitted). For example, if a corporation terminated a

director, who thereby lost compensation, he or she would be permitted to bring a

direct claim. *See id.* at 577 (acknowledging that "removal as a director might, in

some circumstances, give rise to a personal cause of action").

Additionally, the Idaho Supreme Court has recognized that if a minority

shareholder of a closely held corporation alleges a unique injury – separate and

apart from injury suffered by any other shareholder – that minority shareholder

may bring a direct action even if the corporation was also harmed by virtue of the

challenged conduct. *See id.* The Idaho Supreme Court has issued two decisions

concluding that a minority shareholder in a closely held corporation may pursue a

direct claim based on such a theory: *Steelman v. Mallory*, 716 P.2d 1282 (1986)

and *McCann v. McCann*, 275 P.3d 824 (Idaho 2012). Both cases involved three-

member corporations and in both instances, a single minority shareholder alleged

that the other two were attempting to squeeze him out.

In *Steelman v. Mallory*, 716 P.2d 1282 (1986), the two majority shareholders

voted to terminate minority shareholder Steelman's employment with the company

and then "appropriate[ed] to themselves the funds and business of the corporation."

*Id.* at 1284. Steelman sued for breach of fiduciary duty and prevailed in district

court. On appeal, defendants argued that Steelman's suit should be dismissed

because it had to be pursued as a derivative suit. The court disagreed, holding that

directors and majority shareholders owe a fiduciary duty to minority shareholder in

a closely held corporation. Steelman was thus permitted to pursue his direct claim.

Over 25 years later, in *McCann v. McCann*, 275 P.3d 824 (Idaho 2012), the Idaho Supreme Court again concluded that a minority shareholder in a three-member, closely held corporation could pursue a direct claim rather than a derivative claim. There, minority shareholder Ron McCann alleged that the other shareholders were attempting to squeeze him out by, among other things: not paying dividends despite sufficient cash flow; not providing corporate employment or board membership to him; authorizing "phony transactions" to avoid benefitting him; and making management decisions that diverted cash flow to the majority shareholders and away from him. *Id.* at 831. In concluding that plaintiff Ron McCann could pursue a direct action, the court noted that he had suffered a unique, individualized injury, similar to that suffered by Steelman:

> In this light, the actions of the Corporation and its directors have an effect on Ron above and beyond the effect of every other shareholder. Each of these transactions hurts Ron specifically. In this way, Ron's loss is analogous to the loss felt by Steelman. Both men were the only shareholders in a close corporation to experience an injury caused by the other shareholders.

*Id.* at 832.

Four years later, the Idaho Supreme Court handed down *Kugler v. Nelson*, 374 P.3d 571 (Idaho 2016), which involved a five-person, closely held corporation. In that case, four of the five shareholders voted plaintiff Kugler out as a director and then approved a series transactions Kugler said were harmful to the

corporation. On these facts, the court concluded that Kugler was pursuing derivative claims. It then affirmed the district court's grant of summary judgment in favor of defendants, as Kugler had failed to comply with notice requirements applicable to derivative claims. Throughout its opinion, the *Kugler* Court emphasized the need for a minority shareholder to allege a truly individualized harm – that is, a harm not suffered by any of the other shareholders. In dismissing Kugler's first cause of action, the court noted: "any damage to Kugler would not be distinct from harm to H&M [the corporation] and other shareholders." *Id.* at 577. In dismissing the second cause of action, the Court reasoned that "Kugler fails to identify any damage individual to him or having its origin in circumstances independent of his status as a shareholder." *Id.* And in dismissing the third, the Court again focused on Kugler's failure to show that he had suffered individualized harm: "This cause of action only asserts a wrong to H&M and *Kugler identifies no basis for a determination that he has suffered individualized harm.*" *Id.* (emphasis added).

Here, defendants claim Baseline doesn't fit the definition of a closely held corporation in the first place, so Fordemwalt cannot rely on the above cases and theories to support a direct, "squeeze-out" claim. The Court does not need to resolve this issue, however, because Fordemwalt has failed to allege a direct claim regardless.

Although Fordemwalt repeatedly alleges he has suffered "individualized harm" in his amended complaint, he has failed to allege any facts showing this is so. To the contrary, he has alleged that there are other minority shareholder and that these shareholders are in the same position he is. Fordemwalt acknowledges this, but argues that Idaho case authority allows him to bring a direct claim if he simply alleges that a majority shareholder – here, HydroPoint – is taking actions that amount to an effort to "squeeze out" *all* minority shareholders – not just one.

The Court disagrees. As discussed above, the Idaho Supreme Court has emphasized that a shareholder seeking to allege a direct, "squeeze-out" claim must allege a truly unique harm – one that is distinct from that suffered by all other shareholders. Indeed, as noted above, there are only two cases in which the Idaho Supreme allowed a direct claim to proceed, and in both instances, the complaining shareholder alleged that he alone had suffered a unique injury. And it's worth repeating that the definition of a derivative action – as stated by the Idaho Supreme Court – includes situations where a shareholder sues to remedy a wrong to the corporation because the corporation, controlled by wrongdoers, fails and refuses to take appropriate action for its own protection. *See Kugler*, 374 P.3d at 576. This is precisely the situation Fordemwalt alleges. He claims that HydroPoint and the individual defendants are the wrongdoers in control of the corporation, and that the corporation has thus failed and refused to take appropriate action to protect itself.

This is a textbook derivative lawsuit, and Fordemwalt alleges no individualized harm. As such, he cannot pursue direct claims.

And there are good reasons for this result. *First*, a derivative proceeding is preferable because, assuming Fordemwalt prevails, he would be adequately compensated through an increase in the value of his shares. *Second*, if Fordemwalt were allowed to pursue a direct claim, there would be a danger of multiplicity of lawsuits and the rights of other minority shareholders might be prejudiced. There were no such concerns in *Steelman* and *McCann,* as the complaining shareholder in each case was the sole minority shareholder. *Third,* and most broadly, a derivative lawsuit respects the corporate form. *Baseline* is the legal person that has allegedly suffered an injury here. As such, it should be the one pursuing the alleged wrongdoers and seeking redress.

For all these reasons, the Court will dismiss Counts 2 and 4, without leave to amend.

### C. Count 6 Fails to State a Claim for Tortious Interference of Contract

The Court will also dismiss Count 6, though it will grant Fordemwalt an opportunity to amend. In Count 6, Fordemwalt alleges that each of the individual directors tortiously interfered with his contractual relationship with Baseline.

"Tortious interference with contract has four elements: "(1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3)

intentional interference causing breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1083 (Idaho 2010) (*quoting Bybee v. Isaac*, 178 P.3d 616, 624 (Idaho 2008)). Further, a party cannot tortiously interfere with its own contract. Thus, "it follows that an action for intentional interference with contract can only lie against a third party." *BECO Construction Co., v. J-U-B Engineers, Inc.*, 184 P.3d 844, 849 (Idaho 2008). In the context of an agency situation, individual defendants can be viewed as third parties to a contract – even if the principal is a party to that contract – if they act outside the course and scope of their agency. *See id.*

This is where Fordemwalt's claim fails. The individual defendants contend that the claim fails because they were acting on *Baseline's* behalf in responding to Fordemwalt's records request. Fordemwalt disputes this. But even accepting this, he has still alleged that the individual defendants were acting on *HydroPoint's* behalf. Paragraph 96 alleges that "HydroPoint, at the direction of the Individual Defendants, expended over $180,000 on attorneys to deprive Plaintiff of his right to review books and records of Baseline." *Am. Comp.* ¶ 97. HydroPoint, of course, as a Baseline shareholder, is also party to the bylaws, and thus in a contractual relationship with both Baseline and the other Baseline shareholders. *See generally* 18 *C.J.S. Corporations* § 157 (2023) ("Corporate bylaws constitute a contract between the corporation and its shareholders or members, as well as among the

shareholders or members themselves.") (footnote citations omitted). In other

words, HydroPoint is not a stranger to the bylaws and thus cannot act to interfere

with those bylaws. Accordingly, the Court will dismiss this claim. Fordemwalt will

be allowed an opportunity to amend this claim, however. Unlike his other claims,

Fordemwalt has alleged an injury unique to himself with respect to this claim. He

says he has been wrongly forced to expend time and money in his efforts to inspect

corporate books and records.

## PLAINTIFF'S MOTION TO AMEND

After Defendants filed a motion to dismiss his direct claims, Fordemwalt

filed a motion to amend his complaint. He wishes to add allegations stating that

Baseline is a "closed corporation" "with few shareholders" and "no ready market

for sale."

Leave to amend pleadings shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). Courts apply Rule 15 with extreme liberality. *Eminence

Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations

omitted). In determining whether to grant leave to amend, the court generally

considers five factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4)

prejudice to the opposing party; and (5) whether the plaintiff has previously

amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th

Cir. 2011) (citation omitted). These factors are not weighted equally: futility of

amendment alone can justify the denial of a motion to amend. *See Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

The Court will deny this motion based on the third enumerated factor – futility. Fordemwalt's proposed amendment does nothing to cure the deficiencies in Counts 2 and 4. As already discussed, even assuming Baseline is a closely held corporation, Fordemwalt cannot pursue direct claims because he has failed to allege an individualized injury.

## DEFENDANTS' MOTION TO APPOINT A PANEL

Baseline asks the Court to appoint an independent panel to determine whether maintaining this lawsuit is in its best interests and to stay the lawsuit until the panel has concluded its work. Baseline brings this request under Idaho Code § 30-29-744 and Federal Rule of Civil Procedure 53(c).

Beginning with Idaho Code § 30-29-744, this section provides that a court *must* dismiss a derivative proceeding if certain specified groups – including a court-appointed panel – conduct a reasonable inquiry and conclude, in good faith, that maintenance of the derivative proceeding is not in the corporation's best interest. *See* Idaho Code § 30-29-744(a). Sub-section (e) of that statute empowers courts to appoint such a panel. It provides:

> Upon motion by the corporation, the court may appoint a panel of one (1) or more individuals to make a determination whether the maintenance of the derivative proceeding is in the best interests of the corporation.

§ 30-29-744(e).

Baseline says courts across the country routinely appoint panels under the same or similar statutory language – particularly when the motion is timely and where appointment of a panel would not unduly prolong the litigation, does not conflict with company bylaws, and would serve the goal of efficiency.

From a procedural standpoint, Baseline relies on Federal Rule of Civil Procedure 53(c), which provides: "Unless a statute provides otherwise, a court may appoint a master only to . . . address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). As with an appointment under Idaho Code § 30-29-744(e), appointment under Rule 53 is within this Court's discretion.

Before discussing the merits of the request, the Court will pause to address whether the Idaho statute contains substantive or procedural law. Baseline has contended – without any objection from Fordemwalt – that Idaho Code § 30-29-744 sets forth substantive law. The Court presumes that in advancing this argument, Baseline has its eye on subdivision (a) of that statute, which provides an avenue for dismissal of this lawsuit. The Court agrees that that particular aspect of the statute is governing substantive law. But the Court concludes that subdivision (e), which sets forth a mechanism for the Court to appoint an independent panel to evaluate derivative claims, is procedural. That said, the Court does not see an *Erie*

problem, given that the provisions of Federal Rule of Civil Procedure 53 and Idaho Code § 39-29-744(e) can both be honored in this diversity action. *Cf. Crown Crafts, Inc. v. Aldrich*, 148 F.R.D. 547, 548-49 (E.D.N.C. 1993) (concluding that that there was no *Erie* problem in applying a North Carolina state statute allowing for court appointment of a special litigation committee); *see generally Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460 (1965).

Baseline says a Court-appointed panel "would provide detailed analysis at a much lower cost than full-blown litigation." *Mtn. Mem.,* Dkt. 5-1, at 18. Baseline also contends that Fordemwalt's refusal to agree to a panel – particularly when he had the chance to select the panel – demonstrates that he is an obstructionist bent on driving up Baseline's litigation costs instead of resolving this dispute. As an example, Baseline says it has already had to incur the cost of a state-court lawsuit, in which Fordemwalt unsuccessfully accused Baseline of refusing to permit an inspection of corporate records in violation of Idaho Code § 30-29-1604. *Id.* at 19.

Fordemwalt, on the other hand, argues that appointment of a panel is inappropriate for several reasons. His lead argument is that he is pursuing direct claims, which he describes as "the most complex and significant claims in this case . . . ." *Response,* Dkt. 21, at 20-21. He thus argues that appointment of a panel would be "especially erroneous" because he would be denied his "his due process rights to discovery and to prosecute his claims under the Rules of Civil Procedure."

*Id.* at 2. As discussed above, however, the Court has concluded that Fordemwalt is mainly pursuing derivative claims. To the extent he amends his complaint to successfully allege a direct claim, the issues raised by that claim are minor in comparison to the more complex issues raised in the derivative claims.

The Court is also unpersuaded by Fordemwalt's contention that the nature of this particular derivative action, as well as the nature of this particular corporation, counsels against appointing an independent panel. Even though Fordemwalt is claiming that Baseline's majority stockholder is pillaging the corporation for its benefit, there is no reason that an independent panel wouldn't be able to determine whether that is so.

Ultimately, then, deciding whether to appoint a panel boils down to whether doing so would provide the best path forward or whether it would simply add delay and complexity to the litigation. After having considered the parties' arguments, including those advanced during oral argument, the Court is persuaded that appointing a panel and staying this litigation is appropriate. Not only will the panel be able to determine whether pursuing this litigation is in the best interests of the corporation, but the Court is also persuaded that it would be a speedier path forward, especially considering this Court's heavy docket. Accordingly, the Court will stay this action and put the following procedures in place, with an eye to getting the panel appointed as soon as possible:

(1) Within 21 days of this Order, Mr. Fordemwalt shall have the opportunity to propose two alternate litigation panels.

(2) Baseline shall then have 14 days in which to either (a) accept one of the panels Mr. Fordemwalt has proposed; or (b) indicate that none are acceptable and propose two panels for Mr. Fordemwalt's consideration. Mr. Fordemwalt shall then have 14 days to determine whether one of the panels Baseline has proposed is acceptable.

(3) If, after going through this process, the parties are able to agree upon a panel, they shall notify the Court. The notification shall be filed within five days of the panel being selected and shall set forth the name(s) and contact information of the panel member(s).

(4) If, on the other hand, the parties are unable to agree upon a panel, counsel shall submit the following materials to the court within five days of Fordemwalt having rejected both panels proposed by Baseline: (1) the names and resumes of their proposed panel members; and (2) a short brief, not to exceed 10 pages, explaining why the panels they proposed are qualified. The Court will then select a panel from the four competing panels.

(5) Once a panel is in place, the panel shall submit brief, bi-monthly reports to this Court as to the status of its work – including an estimated completion date – on the last day of the month. For example, if a panel is in place by May 15, 2023, the first report shall be filed on May 31, 2023. The next report would be due on July 31, 2023, and so on. (If the last day of the month falls on a weekend or holiday, the report shall be due the following business day.)

(6) The Court would expect that the panel would conclude its work within around 60-90 days of having been appointed. Nevertheless, at this time, the Court will not set a firm deadline for the panel to complete its work. If, down the road, the Court becomes persuaded that the panel needs to conduct its work more expeditiously, the Court will step in and establish deadlines.

(7) The parties shall notify the Court when the panel has concluded its work and made a recommendation as to whether this lawsuit should proceed.

(8) If the panel concludes that pursuing this lawsuit is in Baseline's best interests, the Court will lift the stay and conduct a scheduling conference and issue a scheduling order afterward.

(9) If the panel concludes that pursuing this lawsuit is *not* in Baseline's best interests, the Court will lift the stay and conduct a status conference with the parties to establish the appropriate procedural path forward.

## THE MOTIONS TO SEAL

Baseline and Fordemwalt have moved to seal various documents filed in connection with their pending motions.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (*quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Depending on the type of motion filed, the party seeking to seal the documents must either establish either "compelling reasons" or "good cause" to support secrecy. *See generally Center for Auto Safety v. Chrysler Group, LLC,* 809 F.3d 1092, 1101 (9th Cir. 2016). The parties have argued that they need only meet the lower standard of good cause because the underlying motions are non-dispositive. But the Ninth Circuit has rejected a binary approach, recently clarifying that

"public access to filed motions and their attachments does not merely depend on whether the motions is technically 'dispositive.'" *Id.* So rather than asking whether a motion is dispositive or non-dispositive, the Court must ask "whether the motion is more than tangentially related to the merits of a case." *Id.*

Here, the majority of the documents the parties wish to keep secret were filed in connection with Baseline's request that the Court appoint a panel to evaluate this derivative action. *See Motions to Seal,* Dkts. 6, 19. If the Court were to appoint a panel, and the panel then conducted a reasonable inquiry and determined, in good faith, that the action was not in Baseline's interest, Idaho Code § 30-29-744(a) says the lawsuit "shall be dismissed . . . on motion by the corporation . . ." If a corporation were to make *that* motion (i.e., a motion to dismiss), then the Court would not seal supporting documents absent a showing of compelling reasons. But at this preliminary stage – when the parties are simply arguing about whether a panel should be appointed in the first place – the Court is satisfied that such a motion is only tangentially related to the merits of the case. Accordingly, the Court will apply the lower, good-cause standard. And based on the record before it, the Court finds that the parties have made that showing with respect to the documents connected to the motion to appoint a litigation panel. The Court will therefore grant the two motions to seal related to the briefing filed in connection with the motion to appoint a litigation panel.

The third motion to seal was filed with plaintiff's response to Defendants' motion to dismiss the direct claims. Thus, the higher, compelling-reasons standard applies, as such a motion is dispositive and related to the merits of the case. Mr. Fordemwalt has not made any effort to satisfy that standard. (In his briefing, he relied upon the inapplicable, good-cause standard). Similarly, Mr. Fordemwalt did not specifically discuss the document he wishes to have sealed, which is a one-page document listing the 29 Baseline shareholders by name and number and percentage of shares owned. Presumably, Mr. Fordemwalt does not wish to reveal the names of third parties alongside their percentage ownership in the company, as members of the public could potentially extrapolate third parties' personal, financial information from such a document. Under these circumstances, the Court will grant the motion to seal, but it will also order Plaintiff to file a redacted version of the document. The redacted version should black out only the names of any third party Baseline shareholders.

Finally, the Court will observe that litigants tend to be overly ambitious and overly inclusive in requests to seal documents. It's easy for the Court to go along with such motions, especially when they are unopposed, and it would be less work for all involved if the Court rubber-stamped the motion and moved on to the weightier, disputed legal issues. But, with some very limited exceptions, district courts should not perform their work in secret. Thus, the Court will advise the

parties to take a sparing approach in filing any future motions to seal. The Court will not be inclined to grant requests to seal hundreds of pages of documents supported only by boilerplate explanations as to why the documents should be sealed.

## ORDER

**IT IS ORDERED that:**

1.    Baseline, Inc.'s Motion to Appoint a Panel and Stay this Action (Dkt. 5) is **GRANTED.** This matter is therefore **STAYED** pending further order of the Court.

2.    Defendants' Renewed Motion to Dismiss "Direct" Claims (Dkt. 24) is **GRANTED.** Counts 2 and 4 of the Amended Complaint are dismissed without leave to amend. Count 6 is granted with leave to amend. Given that this matter shall be stayed, however, the plaintiff will have until 14 days after the stay of this matter lifts in which to file an amended complaint.

3.    Plaintiff's Motion to Amend (Dkt. 27) is **DENIED**, although the plaintiff may choose to file an amended claim related to Count 6, as noted above.

4.    The parties' Motions to Seal, filed at Dkts. 6 and 19, are **GRANTED.**

5.    Plaintiff's Motion to Seal, filed at Dkt. 28, is **GRANTED,** provided,

however, that Plaintiff must file a redacted version of the sealed

document, as explained above, within 7 days of this Order.

6.    The following procedures shall govern the selection and appointment

of a litigation panel:

a.  Within 21 days of this Order, Mr. Fordemwalt shall propose
    two alternate litigation panels to Baseline.

b.  Baseline shall then have 14 days in which to either (a)
    accept one of the panels Mr. Fordemwalt has proposed; or
    (b) indicate that none are acceptable and propose two panels
    for Mr. Fordemwalt's consideration. Mr. Fordemwalt shall
    then have 14 days to determine whether one of the panels
    Baseline has proposed is acceptable.

c.  If, after going through this process, the parties are able to
    agree upon a panel, they shall notify the Court. The
    notification shall be filed within five days of the panel being
    selected and shall set forth the name(s) and contact
    information of the panel member(s).

d.  If, on the other hand, the parties are unable to agree upon a
    panel, counsel shall submit the following materials to the
    court within five days of Fordemwalt having rejected both
    panels proposed by Baseline: (1) the names and resumes of
    their proposed panel members; and (2) a short brief, not to
    exceed 10 pages, explaining why the panels they proposed
    are qualified. The Court will then select a panel from the
    four competing panels.

e.  Once a panel is in place, the panel shall submit brief, bi-
    monthly reports to this Court as to the status of its work –
    including an estimated completion date – on the last day of
    the month. For example, if a panel is in place by May 15,
    2023, the first report shall be filed on May 31, 2023. The
    next report would be due on July 31, 2023, and so on. (If the
    last day of the month falls on a weekend or holiday, the

report shall be due the following business day.)

f.  The Court would expect that the panel would conclude its work within around 60-90 days of having been appointed. Nevertheless, at this time, the Court will not set a firm deadline for the panel to complete its work. If, down the road, the Court becomes persuaded that the panel needs to conduct its work more expeditiously, the Court will step in and establish deadlines.

g.  The parties shall notify the Court when the panel has concluded its work and made a recommendation as to whether this lawsuit should proceed.

h.  If the panel concludes that pursuing this lawsuit is in Baseline's best interests, the Court will lift the stay and conduct a scheduling conference and issue a scheduling order afterward.

i.  If the panel concludes that pursuing this lawsuit is *not* in Baseline's best interests, the Court will lift the stay and conduct a status conference with the parties to establish the appropriate procedural path forward.

DATED: April 9, 2023

B. Lynn Winmill
U.S. District Court Judge